UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SVETLANA KHANIMOVA, as Parent and Natural Guardian of R.N., and SVETLANA KHANIMOVA, Individually,

        Plaintiff,

-against-

DAVID C. BANKS et al.,

        Defendants.

23-CV-09531 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

  Plaintiff Svetlana Khanimova ("Plaintiff") brings this action individually and on behalf of her minor child R.N. against Defendants the New York City Department of Education (the "DOE") and David C. Banks, in his official capacity as Chancellor of the DOE[1] (together, "Defendants"), seeking to overturn the decision of the State Review Officer ("SRO") who determined that Plaintiff's unilateral placement of R.N. at a private school, the International Institute for the Brain ("iBrain"), for the 2022–2023 school year was not appropriate and who accordingly denied reimbursement of that placement.

  Now before the Court are the parties' cross-motions for summary judgment. *See* Dkt. Nos. 16, 17 ("Plaintiff Mot."), 18, 19 ("Defendants Mot."). For the reasons set forth herein, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's motion for summary judgment is **DENIED**.

---

[1] Since the filing of this motion, Mr. Banks has resigned and the current DOE Chancellor is Melissa Aviles-Ramos. Nothing about this change in personnel affects the outcome of this motion.

1

## BACKGROUND[2]

R.N. was a five-year old child during the 2022–2023 school year. She suffers from Traumatic Brain Injury, as classified by the Committee on Special Education ("CSE"), and she has infantile spasms, hearing loss, and legal blindness, and is non-ambulatory and non-verbal. R.N. has limited mobility and relies on a wheelchair.

The CSE convened on February 28, 2022, and June 21, 2022, to formulate R.N.'s Individualized Education Program ("IEP") for the 2022–2023 school year. It recommended, *inter alia*, a 12:1 (3+1) class placement for R.N. at a District 75 public school, with related services consisting of 60 minutes each of occupational therapy ("OT"), physical therapy ("PT"), and speech-language therapy five times per week, vision education services for 60-minute sessions three times per week, parent counseling and training once a month, as-needed school nurse services, and a full-time 1:1 paraprofessional. R.N.'s parents disagreed with the recommendations contained in the IEP and with her placement at the assigned public school, and on June 17, 2022, Plaintiff notified the school district of her intent to unilaterally place R.N. at iBrain for the 2022-2023 school year (which school R.N. had been attending since October 2021) and to seek public funding of that placement. iBrain developed a plan for R.N. for the 2022-2023 school year, which consisted of a 6:1+1 special class placement, as well as related services consisting of, *inter alia*, three 60-minute sessions per week of vision education services; five 60-minute sessions per week of speech-language therapy, OT, and PT; two 60-minute sessions per week of individual hearing education services; one 60-minute session per week of individual

---

[2] The Court's account of the underlying facts is derived from the certified administrative record, Dkt. Nos. 15-1–15-2, 23-1 ("CAR"), including the IHO's decision, *id.* at R024–47, and the SRO's decision, *id.* at R011–23. The parties stipulated that there are no disputed issues of fact material to the pending motions and asked that statements pursuant to Local Rule 56.1 be waived, which the Court granted. *See* Dkt. No. 12. Particularly in light of the lack of factual dispute, individual citations to the CAR will not be provided herein unless specifically quoted or referenced.

orientation and mobility services; and parent counseling and training once a month. It also called for a 1:1 paraprofessional throughout the school day.

Plaintiff filed a due process complaint ("DPC") notice on July 6, 2022, alleging that the district failed to offer R.N. a free and appropriate public education ("FAPE") for the upcoming school year and seeking reimbursement for the unilateral placement at iBrain. An impartial hearing was held over multiple days before impartial hearing officer ("IHO") Steven P. Forbes, which concluded on April 20, 2023. The school district introduced two exhibits, and Plaintiff introduced 11 exhibits and presented three witnesses: Tiffany Semm, Director of Special Education at iBrain; Chesky Jacobowitz, CEO of B&H Health Care Services; and Plaintiff.

The IHO found that because the school district presented no witnesses and no documentary evidence sufficient to demonstrate that it had offered R.N. a FAPE, the IHO was "constrained to find that the District [had] conceded that it . . . did not offer [R.N.] an appropriate placement for the 2022–2023 school year." CAR at R029. As such, the IHO found that R.N. was denied a FAPE for the 2022–2023 school year. However, the IHO also found that Plaintiff had not demonstrated that iBrain was an appropriate placement for R.N. Although the IHO found the plan developed by iBrain to appear, "on its face, to be both comprehensive and specifically tailored to meet [R.N.'s] individual needs," Plaintiff had provided "scant evidence" that R.N. was making progress at the school or that she was receiving "the requisite quantum and nature of education or related services to which she was entitled." *Id.* at R031–35; *see also id.* at R042–43. In light of that finding, the IHO found that it was not necessary to make a determination on the balance of equities and denied reimbursement for the 2022-23 school year. The IHO ordered the DOE to conduct evaluations of R.N. "in all areas of suspected disability,"

and subsequently to reconvene the CSE and determine what modifications needed to be made to R.N.'s IEP.  *Id.* at R045.

Plaintiff appealed the decision to an SRO, arguing that the IHO erred in concluding that the unilateral placement was not appropriate because the parents had shown that, at the time R.N. was placed at iBrain, the placement was likely to produce progress.  SRO Steven Krolak upheld the decision of the IHO, finding that, in spite of iBrain's plan mandating related services for R.N. at the frequencies specified above, the impartial hearing evidence established that "significant portions of the related services recommended in the iBrain plan . . . were not being provided to" R.N.  *Id.* at R020.  Specifically, Semm had testified that iBrain was "short of providers in each department and that the student was receiving her services weekly but not at the full mandates set forth in the iBrain plan."  *Id.*  Plaintiff did not enter any records of the number of sessions of related services that R.N. had actually received, but Semm testified an estimate that in light of the shortages, students received "most typically two to three per week at least" of mandated related services, without specifying any specific area of such services.  *Id.*  Overall, the SRO found that the record showed that R.N. had received "around or a little above half of the recommended speech-language therapy, OT, and PT services;" that it was unlikely—given that such testimony was given in May 2023—"that there was enough time to reasonably make up such a large amount of missed services before the end of the . . . school year;" and that in any case, the shortage of implemented services was "of heightened concern" considering iBrain's own plan "highlighted the necessity of the consistency of daily, five days a week, therapy sessions" for R.N. to make progress.  *Id.* at R020–21.  The SRO also found that evidence of R.N.'s progress was a relevant (though not dispositive) factor, and that there was no objective

evidence in the record that R.N. had made progress over the 2022-2023 school year.  *See id.* at R022–23.

Plaintiff initiated this action by complaint on October 31, 2023, asking the Court to reverse the portions of the SRO's decision upholding the IHO's determinations that Plaintiff did not meet her burden of demonstrating that iBrain was an appropriate unilateral placement for the 2022–2023 school year and that it was unnecessary to determine whether the equitable considerations favored Plaintiff.  *See* Dkt. No. 1.

The case was reassigned to the undersigned on February 20, 2024.  Plaintiff has now moved for summary judgment, seeking an order declaring that iBrain was an appropriate unilateral placement for the 2022–2023 school year and requiring Defendants to reimburse the Plaintiff's costs.  *See* Dkt. Nos. 16–17.  Defendants have also moved for summary judgment, seeking an order upholding the SRO's decision.  *See* Dkt. Nos. 18–19.

## LEGAL STANDARDS

### I. The IDEA Generally

"The [Individuals with Disabilities Education Act ("IDEA")] authorizes the disbursement of federal funds to [s]tates that develop appropriate plans to, among other things, provide a free and appropriate public education ("FAPE") to children with disabilities."  *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (internal references omitted). "To provide a FAPE to each student with a disability, a school district must develop an IEP that is 'reasonably calculated to enable the child to receive educational benefits.'"  *Id*. (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)).

Parents who wish to challenge the adequacy of their child's IEP can avail themselves of New York's two-tier system of administrative review: first, by filing an administrative due

5

process complaint and requesting a hearing before an IHO; and second, by appealing that officer's decision to a state review officer. 20 U.S.C. § 1415(f)–(g); N.Y. Educ. Law § 4404(1)–(2). The IDEA permits dissatisfied parents to pursue judicial review of the SRO's decision in, *inter alia*, a federal district court. *Ventura*, 959 F.3d at 526; *see also* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3). The district court receives the records of the state administrative proceedings and hears additional evidence if requested. 20 U.S.C. § 1415(i)(2)(C)(i)–(ii).

## II.     Summary Judgment in the IDEA Context

In IDEA cases, the usual summary judgment standards do not apply. *See, e.g., T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377–78 (S.D.N.Y. 2006). Instead, summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment." *See Arlington Cent. Sch. Dist. v. D.K. & K.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005). When reviewing administrative decisions under the IDEA, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C); *T.P. ex rel. S.P.*, 554 F.3d at 252.

"The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy." *R.E. ex rel. J.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (citing *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112–13 (2d Cir. 2007)). Typically, the court "must give due

weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. ex rel. P.H. v. New York City Dep't of Educ.* ("*M.H.*"), 685 F.3d 217, 240 (2d Cir. 2012) (internal references omitted) (citing *Gagliardo*, 489 F.3d at 113).  But where the challenged administrative determination implicates a pure legal question, the Court owes no deference to the underlying ruling.  *See Montalvan v. Banks*, 707 F. Supp. 3d 417, 430 (S.D.N.Y. 2023) (citing *Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997)).

**III.     The *Burlington/Carter* Framework**

Where a school district denies a disabled child a FAPE, parents may unilaterally place the child in a private school and seek tuition reimbursement from the district.  *See* 20 U.S.C. § 1412(a)(10)(C); *Sch. Comm. of Burlington v. Dep't. of Educ.*, 471 U.S. 359, 370 (1985); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).  However, "parents who unilaterally change their child's placement . . . without the consent of state or local school officials, do so at their own financial risk." *Burlington*, 471 U.S. at 373–74.

"In determining whether parents are entitled to reimbursement, the Supreme Court has established a two-pronged test: (1) was the IEP proposed by the school district inappropriate; (2) was the private placement appropriate to the child's needs." *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006); *see also Carter*, 510 U.S. at 15.  Moreover, "equitable considerations are relevant in fashioning relief," and "[c]ourts fashioning discretionary relief under [the] IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." *Carter*, 510 U.S. at 16 (internal reference omitted). Accordingly, what is generally referred to as the *Burlington/Carter* test has three prongs: (i) the services offered by the board of education were inadequate or inappropriate, (ii) the services

7

selected by the parent were appropriate, and (iii) equitable considerations support the parents' claim. *See M.O. v. Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015). "Parents seeking reimbursement for a private placement bear the burden of demonstrating that the private placement is appropriate, even if the proposal in the IEP is inappropriate." *Frank G.*, 459 F.3d at 364.

In evaluating the second prong of the *Burlington/Carter* test, "the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement," subject to certain exceptions.[3] *Id.* The ultimate consideration is whether the placement is "reasonably calculated to enable the child to receive educational benefits," *id.* (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)), and is "likely to produce progress, not regression." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 836 (2d Cir. 2014) (internal references omitted). "Progress may be demonstrated by grades, test scores, regular advancement, or other objective evidence, but no single factor is dispositive as courts assessing the propriety of a unilateral placement [must] consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs." *Id.* (internal reference omitted). "An inquiry into the appropriateness of a private placement is thus a search for indicators that the placement provides educational instruction specially designed to meet the unique needs of a disabled child, supported by such services as are necessary to permit the child to benefit from instruction." *Id.* (internal reference omitted).

---

[3] For instance, parents are not barred from reimbursement even if the private school does not meet the IDEA's definition of a FAPE or does not meet state education standards or requirements. *Frank G.*, 459 F.3d at 364.

8

# DISCUSSION

## I. The SRO's Decision Warrants Deference

In this case, the SRO's decision has the hallmarks of an administrative decision that warrants deference. As an initial matter, deference is especially warranted where, as here, "the district court's decision is based solely on the administrative record," rather than also on additional evidence outside the administrative record. *Gagliardo*, 489 F.3d at 113. The parties did not present any additional evidence, but rather submitted motions for summary judgment based on the certified administrative record; as such, the Court's decision is based on the same evidence and the same record that was before the SRO. Additionally, the IHO's decision and the SRO's decision are in agreement, further warranting deference. *See Bird v. Banks*, No. 22-cv-8049 (JGK), 2023 WL 8258026, at *4 (S.D.N.Y. Nov. 29, 2023).

Most importantly, deference "is particularly appropriate when . . . the [SRO's] review has been thorough and careful." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998). In particular, deference is warranted where, as here, the SRO "conducted a thorough review of the entire record . . . and clearly explained the bases for [the] conclusions." *See M.W. v. Bd. of Educ.*, No. 12-cv-1476 (ER), 2013 WL 2631068, at *23 (S.D.N.Y. June 12, 2013), *aff'd sub nom. Ward v. Bd. of Educ.*, 568 F. App'x 18 (2d Cir. 2014). After a review of the SRO's decision and an independent review of the certified administrative record, the Court finds that the SRO's decision was thoroughly reasoned and based on a careful consideration of and supported by the administrative record. As detailed above, the SRO evaluated evidence in the record to ascertain R.N.'s special education needs for the school year, and he detailed specific evidence, including in particular testimony from Semm, that showed that R.N. was not being provided significant portions of the therapy and other related services sessions within the mandates of

9

iBrain's plan for R.N., that there was not enough time to reasonably make up the missed related services sessions for the school year, and that in any event, the consistently missed related services were "of heightened concern" considering that iBrain's plan had highlighted the necessity of the consistency of such sessions.  CAR at R020–21.  The SRO also found, based on the limited evidence that had been presented by Plaintiff, that the record did not demonstrate any meaningful progress for R.N. for the school year.  *Id.* at R022.  In particular, the SRO (i) noted the lack of any progress reports, quarterly reports, or provider notes in the record; (ii) explained that affidavits by Plaintiff and Semm in the record remarking on R.N.'s progress were undated and unsigned but bore an August 2022 date typed by the signature line, when it was too early to observe progress for the school year at issue; and (iii) explained that Semm's testimony regarding R.N.'s progress appeared to have been in regard to progress made before the 2022–2023 school year and, even so, was limited in usefulness because Semm did not work as a classroom teacher or services provider and her work with students was mostly observational.  *Id.* at R021–23.  Moreover, although Semm recalled providers speaking about R.N.'s recent progress, she could not recall progress specific to the goals in iBrain's plan or whether R.N. was on track to meeting those goals.  *Id.*  Overall, the SRO found that although the hearing record had some "anecdotal evidence of progress," the documentary evidence overall did not demonstrate meaningful progress during the school year, and overall the record did not show that R.N. made progress.  *Id.*  Correctly placing the burden on Plaintiff to show that the unilateral placement was appropriate, the SRO found that Plaintiff had not met this burden.  The SRO's decision is entitled to deference.

    Plaintiff argues that the Court should not give deference to the SRO's decision because the SRO incorrectly applied the law; according to Plaintiff, the SRO should have looked to

whether the placement of R.N. was reasonably calculated at the time the placement decision was made, rather than considering actual implementation of the plan over the school year. Dkt. No. 17 ("Pl.'s Br.") at 15–18. Plaintiff argues that this interpretation would allow parents to make a placement decision based on the information available to them at the time of the decision. *Id.* Plaintiff further points out that under the first prong of the *Burlington*/*Carter* test, in assessing whether a FAPE was provided, courts look only to the information available to parents by the DOE at the time of the placement decision. *See* Pl.'s Br. at 15. The Second Circuit has held that "retrospective testimony that the school district would have provided additional services beyond those listed in the IEP may not be considered," a rule that "reasonably protects parents who must assess a proffered IEP without the benefit of after-the-fact testimonial modifications." *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 462 (2d Cir. 2014) (internal reference omitted).

But while that may be the standard when assessing whether a FAPE was provided, with respect to the second prong, parents take on a financial risk when they unilaterally place their child at a private school, *see Burlington*, 471 U.S. at 373–74, and the Second Circuit has made clear that district courts should look to objective "indicators that the placement provides educational instruction specially designed to meet the unique needs of a disabled child, supported by such services as are necessary to permit the child to benefit from instruction." *C.L.*, 744 F.3d at 836 (internal reference omitted). As such, district courts must look to evidence in the record that the placement is in fact providing the student services necessary for the student to benefit. *Id.* Moreover, as even Plaintiff concedes, *see* Dkt. No. 20 ("Pl.'s Opp.") at 11, courts—as part of this inquiry—look to objective evidence of progress, such as test scores and grades. *C.L.*, 744 F.3d at 836; *id.* at 839 (deferring to the IHO's decision instead of the SRO's decision and noting, in part, that the SRO had not examined the student's progress at the private school, whereas the

IHO had considered progress reports and testimony regarding progress). As such, Plaintiff herself acknowledges that courts are not restricted to only the evidence available to the parents at the time they made the unilateral placement decision (and indeed Plaintiff even asks the Court to construe such evidence in her favor). *See* Pl.'s Opp. at 11–14.

The SRO correctly acknowledged this standard in his decision, stating:

> The parent's view that a unilateral placement is only assessed at the time of the placement decision also elides the portion of the standards . . . potentially requiring proof of educational and related services being implemented in a unilateral placement as well as the fact that consideration of the student's progress in attendance at the unilateral placement is a relevant factor to determining the appropriateness of the unilateral placement.

CAR at R017 (citing *Gagliardo*, 489 F.3d at 112).[4]

Overall, courts must determine whether the unilateral placement was providing necessary services to the student, and it was appropriate for the SRO to consider that iBrain did not provide a substantial portion of the related services mandated by iBrain's own plan, including therapy services that R.N. purportedly needed with consistency, in determining that the unilateral placement was not appropriate. *Cf. F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499, 521–22 (S.D.N.Y. 2013) (giving deference to an administrative decision that unilateral

---

[4] The Court does not find persuasive Plaintiff's argument that consideration of such evidence is merely used to determine whether the placement was reasonable at the time the placement decision was made. *See* Pl.'s Br. at 16–17. Plaintiff does not provide support for its argument, other than citing to a Third Circuit case regarding the inquiry under prong one (not two) of the *Burlington*/*Carter* framework. And Plaintiff does not explain why evidence that the school failed to provide mandated therapy services that were necessary for R.N.'s progress is not relevant to a determination of whether "the placement provides educational instruction *specially designed* to meet the *unique* needs of a disabled child." *C.L.*, 744 F.3d at 836 (emphasis added) (internal references omitted).

In any case, Plaintiff argues that iBrain's loss of providers "was unknown and unforeseeable to Plaintiff at the time they enrolled R.N. at iBRAIN anew," Pl.'s Br. at 17, but the record does not reflect this, and Plaintiff provides no citations to the record in support of this argument. Rather, at the hearing, Semm testified that iBrain was "short of providers in each department," but did not provide any details demonstrating this shortage was unforeseeable, including testimony as to when the shortage even began. *See* CAR at R554–55. Indeed, Semm testified that she did not know when the services with respect to R.N.—who began at iBrain in 2021—began to fluctuate from iBrain's plan. *Id.* at R556–57.

placement was appropriate and finding that, where there was evidence that the student in fact did receive speech and language therapy at the private school, the DOE's speculation that the school may not have provided such therapy was insufficient).

Plaintiff further argues that the SRO engaged in "improper speculation" by finding it "'unlikely' that iBRAIN would reasonably make up such a large amount of missed services before the end of the 2022–2023 school year." Pl.'s Br. at 18–19 (quoting CAR at R021). Plaintiff noted that the Second Circuit has prohibited parents from engaging in improper speculation with respect to an IEP. In *M.O. v. Department of Education*, the Second Circuit noted that it was "speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates," and that a parent could not unilaterally place their child at a private school based on such improper speculation. 793 F.3d at 244. The court noted, however, that "it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *Id.* Plaintiff argues that the same standard applies with respect to determining whether a unilateral placement is appropriate. Pl.'s Br. at 18–19.

In this case, Semm testified that R.N. had not been receiving related services within the full mandates of iBrain's plan due to staffing shortages. *See* CAR at R562. Thus, where the school was admittedly incapable—due to staffing shortages—of fulfilling the related services mandates, it was not improper speculation for the SRO to find that iBrain would not provide R.N. the full mandates of such services. *See M.O.*, 793 F.3d at 244. This is not a case, as described in *M.O.*, where the SRO speculated that iBrain—despite having the capability to do so—would not provide the required related service sessions to R.N., but is rather a case in which it "lack[ed] [the capacity to provide] the services required." *Id.* And although Semm testified

13

that she believed additional OT providers were going to start beginning in May 2023 and that iBrain planned to make up sessions that R.N. had missed, she admittedly did not know which services R.N. had missed and to what extent (though she testified her understanding that services were received "most typically two to three times per week at least"), there was no other record of how many related services sessions and of what type needed to be made up, and there was no indication that staff shortages in other related services areas were being remedied.  *See* CAR at R555, R558–59, R561–66.  As such, there was no evidence that iBrain had gained the capability to provide the outstanding service sessions.  Moreover, it was not improper speculation for the SRO to find that there was not "enough time to reasonably make up such a large amount of missed services before the end of the 2022–2023 school year," CAR at R021, because, in addition to the flaws mentioned above, Semm's testimony was given in May 2023, already late in the school year.  This is not speculation, but rather a reasoned conclusion that could be made from merely looking at a calendar and considering the number of available school days and hours in each day remaining in the school year.

      Moreover, even setting these issues aside, Plaintiff ignores that the SRO emphasized not just a concern that the sessions could not be made up before the end of the school year, but more importantly, a "heightened concern" about the fact that sessions had regularly been missed throughout the course of the school year considering that "the iBrain plan highlighted the necessity of consistency of daily, five days a week, therapy sessions for the student to make gains and progress."  *Id.*; *see also id.* at R224–235 (iBrain plan for R.N. explaining the necessity of consistent related services sessions for R.N., and noting that a decrease in the service mandate for OT services five times a week for 60-minute sessions "would lead to a decline in [R.N.'s] progress . . . as she requires this administration of [OT] to address her physical, psychosocial,

14

and cognitive needs"). The fact of the consistently missed sessions over the course of the school year was a key consideration in the SRO's decision and is entitled to deference.

Plaintiff also argues that there was testimonial evidence in the record (as well as sworn statements) by Plaintiff and Semm recounting R.N.'s progress, and that this provided "compelling evidence" that R.N. made "substantial progress at iBrain," and supported a finding that the unilateral placement was appropriate. Pl.'s Opp. at 12–14. "An assessment of educational progress is a type of judgment for which the district court should defer to the SRO's educational experience, particularly where, as [is] the case here, [the Court's decision is] based solely on the record that was before the SRO." *M.S. v. Bd. of Educ.*, 231 F.3d 96, 105 (2d Cir. 2000), *abrogated in part on other grounds*, *Schaffer v. Weast*, 546 U.S. 49 (2005). As detailed above, the SRO thoroughly reviewed the record, noted the lack of any progress reports or provider notes indicating progress, and explained the flaws and limited utility of the testimony regarding progress, including because Semm did not work directly with R.N. and could not speak to R.N.'s progress with respect to the goals in iBrain's plan or whether R.N. was on track to meeting those goals. While there was some anecdotal evidence about R.N.'s progress in the record—as the SRO explicitly acknowledged—there is no objective evidence that warrants overturning the SRO's decision, and Plaintiff has cited none. *See* CAR at R022-23. The SRO appropriately found that Plaintiff had not demonstrated R.N.'s progress at iBrain during the school year.

Finally, Plaintiff dedicates much of her briefs to the argument that the Court should consider the DOE's failure to provide a FAPE in the first place in assessing the reasonableness of Plaintiff's decision to unilaterally place R.N. at iBrain. *See, e.g.*, Pl.'s Br. at 9–13. In underscoring this point, Plaintiff repeatedly cites to an unpublished, non-precedential IHO

15

decision. *Id.* But despite the finding that R.N. was denied a FAPE (which Defendants did not appeal), the law is clear that parents "bear the burden of demonstrating that the private placement is appropriate, *even if* the proposal in the IEP is inappropriate." *Frank G.*, 459 F.3d at 364 (emphasis added). Plaintiff does not and cannot cite to authority stating otherwise. For the reasons explained in the SRO's decision and above, Plaintiff did not meet that burden.

Overall, the Court finds that the SRO's decision is entitled to deference because it was well-reasoned and supported by the administrative record, and properly applied the governing legal standard, and finds based on a preponderance of the evidence that Plaintiff did not meet her burden of demonstrating that unilateral placement of R.N. at iBrain for the 2022–2023 school year was "reasonably calculated to enable [R.N.] to receive educational benefits." *Id*.

## II.     Plaintiff is Not Entitled to Reimbursement for the Unilateral Placement

Plaintiff argues that the Court is "empowered to provide a just outcome for a disabled student," and that a complete denial of funding was "harsh medicine." Pl.'s Br. at 19 (internal reference omitted). But tuition reimbursement is only available where the unilateral placement was appropriate, as Plaintiff acknowledges. *See Gagliardo*, 489 F.3d at 114 ("[T]uition reimbursement is available only for an appropriate private school placement."); Pl.'s Br. at 21. Because the Court adopts the finding of the SRO that the unilateral placement of R.N. at iBrain for the 2022–2023 school year was not appropriate, reimbursement is not available and will not be granted.

## CONCLUSION

For the reasons explained herein, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion is GRANTED. The Clerk of Court is directed to terminate Dkt. Nos. 16 and 18, and to CLOSE the case.

Dated: March 6, 2025
      New York, New York

                                          SO ORDERED.

                                          MARGARET M. GARNETT
                                          United States District Judge